## McCOY *v.* THE STATE.

Where on a trial for simple larceny the evidence authorized a finding that, even if the accused did not steal the property in the county alleged in the indictment, he carried the stolen property into that county before the indictment was found, the venue was sufficiently proved.

Argued May 15, — Decided June 13, 1905.

Indictment for larceny. Before Judge Henry. Walker superior court. March 28, 1905.

*Payne & Payne*, for plaintiff in error.
*W. H. Ennis*, solicitor-general, contra.

FISH, P. J. J. R. McCoy was indicted for the offense of simple larceny, for stealing, in the county of Walker, a cow and calf belonging to J. M. Millwood, the prosecutor. On the trial Millwood testified, that on the night of December 5, 1904, he lost the cow and calf described in the indictment, and that he found them about two weeks later in the possession of Miss Gossatt, who lived some distance from his house but in the same county, Walker. On cross-examination he testified as follows: " I live within a half or three-quarters of a mile from the Tennessee line. After my wife milked that night, my cow and calf were on the outside of any inclosure, and could go where they pleased. The cow had a bell on. her, and I heard her going down the road towards Rossville, but I did not hear her after she passed Rossville. She went up Spring street in Rossville, where the Baptist

Church is located. . . She was up in there somewhere. I don't think she was on top of the hill, but she was in there some- wheres about the Baptist church, still traveling, and I suppose the calf was with her. . . The Baptist church is somewhere close to the Tennessee and Georgia line. . . I don't know where the line is. I don't think she was in Tennessee, but I don't know where the line is exactly, but it is somewhere in the neighborhood of where I last heard the cow, and of course I could not say for certain whether she was in Tennessee or Georgia. When I last heard her, if she was not in Tennessee, she was right at the line and going in that direction. . . It was a little after dark when I heard her going off. I generally kept her in a pasture, and I don't know where she went when she got out. There was not much grazing on the hill where I last heard her, nor until you get beyond there in the open com- mon, and there it is very short, but there is open common be- yond the hill, and that is in Tennessee. My cow did not often graze there. I kept her about home most of the time. . . Where I found the cow on Lookout Mountain was in this county, and this was on the 2d day of January. . . She did not often graze up there, only occasionally, or a few times. . . The cow was raised on the Georgia side, and generally grazed on the Georgia side." Miss Gossatt testified that she bought the cow and calf of the accused in the forenoon of December 6, 1904, at which time he came to her home with the cattle and said that he owned a farm near Trenton, that he had raised the cow, and desired to sell her in order to get money with which to pay his taxes. She further testified that Millwood came to her house and recovered his property. McCoy said in his statement that he bought the cow and calf in Chattanooga, and introduced one witness who swore that she had seen him buy a cow and calf from a man unknown to her, on the streets of Chattanooga, on December 6, 1904. The jury returned a verdict of guilty. The accused made a motion for a new trial, upon the general grounds that the verdict was contrary to law and the evidence and with- out evidence to support it. The motion was overruled, and he excepted.

The main contention of the accused before this court is that the venue of the crime was not proved, in that it was not shown

positively that the animals were stolen in Walker county.    It is well established that the venue of a criminal case may be shown not only by positive testimony, but also by circumstances.    *Key v. State,* 112 *Ga.* 399; and citations.    The evidence in behalf of the State was positive that the stolen cattle were raised in Walker county and were in the habit of grazing within its limits, and there was probably sufficient evidence to authorize the jury to infer that the cattle were actually stolen in that county. When last heard by the prosecutor on the night of December 5, the cattle were in Walker county, and when next seen on the following morning in the possession of the accused they were in Walker county still.    He sold them in Walker county, and there they have remained.    Be that as it may, however, the fact of the stolen cattle being in the possession of the accused in Walker county on the morning after they were stolen would certainly give the court of that county jurisdiction.    The Penal Code, which declares that cattle stealing shall be denominated simple larceny, after defining that offense (§ 155) says, " The thief may be indicted in any county in which he may carry the goods stolen."    " The crime is regarded as completely committed, in all its parts, in each county."    *Tipps* v. *State,* 14 *Ga.* 422.    So even if it were not positively shown that the accused did actually drive the cow and calf away from the custody of the prosecutor whilst they were grazing within the limits of Walker county, the fact of the accused being unlawfully in possession of the stolen property in that county was sufficient to give the court of that county jurisdiction.

*Judgment affirmed.    All the Justices concur, except Simmons, C. J., absent.*