## KREINER v. UNITED STATES.*

(Circuit Court of Appeals, Second Circuit.
March 8, 1926.)

No. 229.

**1. Criminal law ⟨⟩1092(14).**

Under Act June 5, 1900, § 1 (Comp. St. § 1590), certificate of bill of exceptions should state why another than the trial judge allowed and signed bill.

**2. Criminal law ⟨⟩304(17)—Failure of certificate to state why bill of exceptions was signed by another than trial judge, of whose death Circuit Court of Appeals takes judicial notice, not fatal.**

Failure of certificate to state why bill of exceptions was signed by another than trial judge *held* not fatal, as Circuit Court of Appeals may take judicial notice of trial judge's death before bill was signed.

**3. Stipulations ⟨⟩3—Parties cannot, by stipulation, submit to and use on argument in Circuit Court of Appeals exhibits placed in evidence on trial.**

Except in admiralty· suits, parties cannot, by mere stipulation signed by themselves, submit to Circuit Court of Appeals and use on argument therein "physical" exhibits placed in evidence at trial.

**4. Criminal law ⟨⟩826—Refusal of request to charge, presented after jury was instructed, not error (rule 7 of District Court, Southern District of New York).**

Request to charge, presented after jury was instructed, was too late under rule 7 of District Court, Southern District of New York, in force before January 1, 1925, and court's refusal thereof was not error.

**5. Criminal law ⟨⟩776(3).**

Evidence as to accused's "reputation" does not warrant charge that evidence of good "character" may create reasonable doubt of guilt.

**6. Criminal law ⟨⟩377.**

Accused may introduce evidence of his good character.

**7. Criminal law ⟨⟩561(3)—Previous good character does not, as matter of law, raise reasonable doubt of guilt, but should be considered with other evidence in determining guilt or innocence.**

Previous good character does not, as matter of law, raise reasonable doubt of guilt, but irrespective of apparent conclusiveness or inconclusiveness of other evidence, should be considered therewith in determining guilt or innocence, and given such weight as jury thinks it entitled to.

**8. Criminal law ⟨⟩830.**

Court may refuse instruction, which is in any respect erroneous, without qualification.

**9. Criminal law ⟨⟩809—Court should refuse accused's request for instruction in form which would mislead jury.**

Though guilt must be proved beyond reasonable doubt, court should refuse accused's

*Certiorari denied 46 S. Ct. 639, 70 L. Ed. —.

request for instruction in form which would only confuse and mislead jury.

**10. Criminal law ⟨⟩811(4)—Requested charge that evidence of good character may create reasonable doubt of guilt properly refused, as directing special attention to character evidence only.**

Requested charge that evidence of good character may in itself create a reasonable doubt of guilt *held* properly refused as directing special attention to character evidence, without respect to other evidence.

**11. Criminal law ⟨⟩824(1).**

In criminal case, court should instruct on all essential questions of law involved, whether requested or not.·

**12. Criminal law ⟨⟩824(4).**

Accused's counsel has no right to assume that court will instruct on character evidence without request.

**13. Criminal law ⟨⟩835.**

Court need not state reason for refusing requested instruction.

**14. Criminal law ⟨⟩830—Failure to refer to character testimony in charge not error, where only request was for erroneous instruction thereon after jury was instructed.**

Trial court did not err in omitting all reference to character testimony from his charge, where only request was for erroneous instruction thereon after jury was instructed.

**15. Criminal law ⟨⟩1173(1)—Refusal of requested charge directing special attention to character evidence only held not reversible error, as compelling jury to reject it entirely.**

If accused's· counsel, at proper time, requests charge on character evidence, it is court's duty to give correct charge thereon; but in declining belated request, directing special attention to such evidence only, trial judge did not remove such testimony from jury's consideration, and compel them to reject it entirely, so as to require appellate court to set aside verdict and order new trial.

In Error to the District Court of the United States for the Southern District of New York.

William S. Kreiner was convicted of using the mails to defraud, by mailing false financial statements to creditors, and he brings error. Affirmed.

Griffiths & Content, of New York City (Charles H. Griffiths, Harold A. Content, and Clarence V. Opper, all of New York City, of counsel), for plaintiff in error.

Emory R. Buckner, U. S. Atty., of New York City (Ben Herzberg, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The defendant below was indicted for a violation of section 215 of the United States Criminal Code (Comp. St. § 10385), in that he had used the mails in an attempt to defraud by mailing a false financial statement to creditors. The indictment contained three counts, which were alike, except a different creditor was named in each count. The jury brought in a verdict of guilty with a recommendation of mercy. The defendant was sentenced to imprisonment in the United States penitentiary at Atlanta, Ga., for one year and one day on each count to run concurrently.

There are three assignments of error: (1) That the court erred in denying a motion, made on defendant's behalf at the end of the government's case, to dismiss the indictment and for a direction of a verdict in defendant's favor; (2) in denying the motion, made at the end of the entire case, to dismiss the indictment as against the defendant, and for a direction of a verdict of not guilty; (3) in refusing to charge the jury "in substance or effect" that evidence of good character and reputation may of itself raise a reasonable doubt as to the guilt of the defendant.

The first two assignments appear not to have been relied upon, and the argument in this court was restricted to the third assignment of error; and it is to that we shall direct our attention. In doing so we may say that we see nothing in this case to justify the first and second assignments of error.

[1] Before passing to a consideration of the case upon the merits, we may refer to a matter of erroneous procedure, which, as it happens, is not fatal, but which under other circumstances might easily have made it our duty to dismiss the case.

The case was tried before Judge William R. Smith, a District Judge for the Western district of Texas, who at the time of the trial had been designated by the Chief Justice to sit in the Southern district of New York. The trial began on June 26, 1924. The verdict was rendered on June 30, 1924, and sentence was imposed on July 2, 1924. After the trial was concluded, Judge Smith returned to his home in Texas. The bill of exceptions was not settled by Judge Smith, but by one of the District Judges resident in the Southern district of New York, and this he did on October 26, 1925; and in settling the bill and ordering it on file no explanation is made in the certificate he signed of how it happens that the bill is signed by him, and not by the judge who tried the case, and whose duty it was to sign the bill.

In this connection we call attention to the decision of this court in Ulmer v. United States, 266 F. 176, in which it was held that a bill of exceptions is to be signed by the judge who presides at the trial, except as may be provided otherwise by statute. The Act of June 5, 1900, c. 717, § 1 (Comp. Stat. § 1590), sets forth the circumstances under which another judge of the court in which the case is tried may sign the bill of exceptions. It authorizes the judge who succeeds the one before whom the case was tried to sign the bill of exceptions, "if the trial judge is unable to do so by reason of death, sickness, or other disability." In the Ulmer Case we examined this matter at some length, and held that the absence of the trial judge from the district is not a "disability," within the provisions of the statute authorizing another judge to sign. We stated in the Ulmer Case that, where a bill of exceptions is signed by one who was not the trial judge, he should expressly state in his certificate the reason why he, and not the trial judge, allowed and signed the bill.

[2] The certificate signed in this case omits the reason for the bill not being signed by the trial judge. This would compel us to decline to take jurisdiction of the case, if it were not for the fact that we may take judicial notice of the fact which appears in 300 F. vi, that Judge Smith died on August 16, 1924. In view of the death of Judge Smith, the statute gave a District Judge, resident in the Southern district of New York, authority to sign the bill of exceptions in a case not tried by himself. In Ulmer v. United States, 266 F. 176, 181, we said:

"It ought to be said, in any case, that where a bill of exceptions is signed by one who was not the trial judge, he should in doing so expressly state in his certificate the reason why he, and not the trial judge, allowed and signed the bill. Unless this is done, this court may not know by what right one who did not try the case came to allow the bill. In the present case the certificate of the judge does not give us any information whatever upon the subject."

And in Blisse v. United States, 263 F. 961, 967, commenting upon the signing of a bill of exceptions after the term had expired, we also said:

"Where a bill of exceptions is signed after the term at which the judgment is rendered, but within a period allowed by an order made within the term extending the time for its settlement, or by virtue of consent of parties duly given, it ought to contain an ex-

press statement to that effect, so that it may affirmatively appear that the signing and filing of the same were with due authority."

[3] This brings us to another matter in this record, which should not be passed unnoticed. We find the following stipulation signed by the counsel on each side:

"It is hereby stipulated and agreed that, upon the argument of its appeal, in the above case, counsel for either party may submit to the court and use on said argument and physical exhibit and exhibits placed in evidence on the trial of this case."

No "physical exhibit" was in fact presented to us at the argument, nor attempted to be presented, and we are without any knowledge as to what was the nature of the "physical" exhibits to which this refers. But the parties cannot, by a mere stipulation signed by themselves, except in an admiralty suit, do what they attempted to do in this case. Fortunately they did not find it necessary to produce any exhibit of the character referred to in their stipulation. If they had attempted to do it, we should not have received or examined it. And in this connection we call attention to what this court said in Baldwin v. Abercrombie & Fitch Co., 228 F. 895, 901, 143 C. C. A. 293, 299. It was there said:

"Examination of the record shows that, subsequent to the time when allowance of appeal had brought the cause into this court, counsel entered into a stipulation that the prior art patents need not be printed in the record, but might be taken to this court as physical exhibits. To this stipulation they obtained the indorsement by a District Judge of the words, 'So ordered.' Attention of the bar is called to the fact that this court is the one to determine whether or not exhibits marked in evidence in the trial court and sent up here shall or shall not be printed in the record upon which argument is to be had and decision to be asked for. The court is composed of three judges, who necessarily have to study the records on appeal, not in banc, but individually; they cannot do so properly and expeditiously, if there are only single copies of patents, which counsel think of sufficient importance to refer to in their briefs. It is most embarrassing, when one is considering an argument based on such reference, to have to suspend such consideration until he can, perhaps on some subsequent day, obtain the patent from one or the other of his associates. Hereafter the clerk of this court, whenever a stipulation such as this is found in any record filed here, will at once notify counsel that an approval by this court is necessary to its validity."

The defendant is an Austrian by birth and 33 years of age. He came to this country when he was about a year old, and was educated in New York, graduating from the academic department of the College of the City of New York. He then went into partnership with his father as a manufacturer of waists, carrying on the business at the beginning in rooms of the house in which he and his father resided. But the business appears to have prospered and expanded, and he testified that at one time he had a banking credit with the Bank of Manhattan as high as $200,000, and at one time he personally carried life insurance amounting to over $200,000, although at the time of the trial he had none.

The third assignment of error, hereinbefore set forth, relates to the refusal to charge the jury in the manner requested as to certain evidence of good character. This will now be considered. At the trial three character witnesses were called to testify for the defense. A justice of the Supreme Court of New York testified that he had known the defendant very intimately, and that he had known him for 20 or 25 years, "possibly more," and that he knew his family very well, and knew very many other people who knew him. Then he testified as follows:

"Q. Do you know other people, exclusive of his family, who know him? A. Very many.

"Q. Do you know his reputation in the community in which he lives and moves for truth and veracity? A. I do.

"Q. What is it? A. Very excellent."

A judge of the County Court of Bronx County, who had known the defendant for 10 years, and the members of his family and other people who knew him, testified that he knew his reputation for truth and veracity in the community in which he lived, and that it was "very good." And an attorney, who since the trial has become a justice of the Supreme Court of New York, testified that he knew the defendant very well and the members of his family, and had known him for 10 or 12 years, and that his reputation for truth and veracity in the community was "very good."

[4] In the charge to the jury the judge did not instruct specifically upon the testimony as to the good character of the defendant; and at the conclusion of the charge the following occurred:

"Mr. Content: May I ask your honor to

charge that evidence of good character may in itself create a reasonable doubt as to the guilt of the defendant?

"The Court: I decline to so charge.

"Mr. Content: Exception."

No other exception to the charge was taken, and no other requests to charge were preferred by either side. It is claimed now that the refusal of the judge to give the charge as requested was prejudicial error, justifying a reversal of the judgment of conviction and a new trial should be ordered.

It is to be observed that this court, in Linn v. United States, 251 F. 476, 482, 163 C. C. A. 470, 476, condemned the practice of presenting requests to charge after the jury has been instructed; and in that case the court, commenting at some length on this subject among other things, said:

"Requests which are presented after the charge has been given, and even after the arguments have been concluded, are usually designed to lead a judge into error, and the practice of entertaining requests so presented is not deserving of encouragement."

Influenced, perhaps, by what was said upon this subject in that case the District Court for the Southern District of New York adopted the following rule:

"In all civil and criminal trials counsel must submit to the judge all requests for instructions long enough before the charge to allow their adequate consideration. The judge may, in his discretion, refuse to consider all requests submitted too late under the foregoing provision."

And this rule was in force at the time of this trial. In the rules, which became effective on January 1, 1925, in the Southern and Eastern districts of New York, the rule now in force reads as follows:

"Prior to summing up in civil and criminal trials, counsel must submit to the judge all requests for instructions. The judge may, in his discretion, refuse to consider all requests submitted too late under the foregoing provision."

While we think that this request to charge came too late, under the rule as it stood at the time of the trial, not having been presented until after the charge, and so not "long enough before the charge to allow of its adequate consideration," we might dispose of the whole matter at this point, as the judge was entitled to decline to give a request presented at that stage of the trial.

[5] We think the matter of sufficient importance to express our understanding of the law applicable to this class of testimony; and it is to be observed that the request to charge was one concerning evidence of good character, and there was no evidence in the record as to defendant's good *character*. All three witnesses were asked as to defendant's *reputation,* and no one was asked as to his character. Reputation is one thing; character is another. It has been said that character and reputation are as distinct as are destination and journey. Wigmore on Evidence (5th Ed.) vol. 1, § 52 et seq.

[6, 7] It is undoubted that one on trial in a criminal case is entitled to introduce evidence of his good character; and it is undoubted that previous good character does not, as matter of law, raise a reasonable doubt of guilt, but it may, in connection with other evidence, create a reasonable doubt of guilt sufficient to justify an acquittal. Irrespective of the apparently conclusive or inclusive nature of the other evidence, it is to be considered in connection with all the other evidence in the case in determining the general question of guilt or innocence, and it is to be given such weight as under all the facts and circumstances the jury think it is entitled to. 16 C. J. 584, 585.

[8] A court is not bound to give an instruction which is in any respect erroneous, and may refuse it altogether. If it is not correct in all its parts, it may properly be refused. 11 Encyc. Pl. & Pr. 234, and cases there cited. And at page 237 of the same work it is said, if for any reason a request to charge needs explanation or modification to prevent its misleading or confusing the jury, it may properly be refused. In our opinion, it is not error to refuse a request to charge which is not sound law without necessary qualification. In this case the court was not asked in general terms to instruct as to the effect of character evidence and how it was to be considered. In the form in which the request was presented it needed explanation or modification to avoid misleading the jury. For that reason, in the form in which it was presented, it was no error to refuse it. In Agnew v. United States, 17 S. Ct. 235, 241, 165 U. S. 36, 52 (41 L. Ed. 624), the trial court was asked to give an instruction and declined to give it. The Supreme Court, in passing upon it, sustained the action of the trial court, and in doing so said: "The court might well have declined to give it on the ground of the tendency of its closing sentence to mislead."

[9] The courts, in administering criminal justice, must not go so far in their desire to protect the innocent as to make it impossible to convict the guilty; and while a person accused of crime must have his rights protect-

ed, and must be regarded as innocent until he is proven guilty beyond a reasonable doubt, society, too, has its rights, which must be protected. While the government must prove guilt, and prove it beyond a reasonable doubt, a court should be careful to refuse an instruction the effect of which, in the form in which it is presented, is only to mislead and confuse the jury.

In Catts v. Phalen, 2 How. 376, 382 (11 L. Ed. 306), Mr. Justice Baldwin, writing for the Supreme Court of the United States, said: "A party cannot assign for error the refusal of an instruction to which he has not a right to the full extent as stated, and in its precise terms; the court is not bound to give a modified instruction, varying from the one prayed."

In Perovich v. United States, 27 S. Ct. 456, 458, 205 U. S. 86, 92 (51 L. Ed. 722), Mr. Justice Brewer, writing for the court, said: "Singling out a single matter and emphasizing it by special instruction as often tends to mislead as to guide a jury."

And in Bird v. United States, 23 S. Ct. 42, 47, 187 U. S. 118, 130 (47 L. Ed. 100), the court, commenting upon a request to charge which had been refused, said: "It selected and gave certain testimony prominence, and attempted to make it determinative of a reasonable doubt of the guilt of the plaintiff in error."

[10] The charge, as requested, was erroneous, and should not have been given. The request might have been good, if it had been that evidence of good character, when considered with other evidence in the case, may be of itself sufficient to raise a reasonable doubt in the mind of the jury. But in the form in which it was requested it was in our opinion unsound, because it directed the jury's special attention to the evidence as to character without respect to the other evidence in the case. We understand the rule to be that the jury are to consider all the evidence in the case, including that of good character, and when so considered the evidence of good character may be sufficient to give rise to a reasonable doubt justifying a verdict of acquittal, when without it the other evidence in the case would be convincing of defendant's guilt.

This is not only the rule in this circuit, but also in the Third, Fifth, Eighth, and Ninth circuits. In the Sixth and Seventh circuits and in the District of Columbia a contrary view is taken.

Our attention is called to Edgington v. United States, 17 S. Ct. 72, 164 U. S. 361, 366 (41 L. Ed. 467). All that the court ac-tually decided in that case was that the value of evidence of good character was not confined to doubtful or conflicting cases, or is not to be considered by the jury unless the other evidence left the mind in doubt, but that the weight of authority supports the proposition that good character in any case, when considered in connection with the other evidence in the case, may generate a reasonable doubt. Grave v. United States (C. C. A.) 4 F.(2d) 658, 662; Le More v. United States, 253 F. 887, 895, 165 C. C. A. 367; Hoback v. United States (C. C. A.) 284 F. 529, 535; Warren v. United States, 250 F. 89, 92, 162 C. C. A. 261. In United States v. Babcock, 24 Fed. Cas. 913, No. 14,487, 3 Dill. 581, Judge Dillon, in 1876, charged the jury as follows:

"The defendant has produced an impressive array of witnesses of the highest character, who have testified to his previous uniform and general good reputation as a man of unquestioned integrity. This is competent evidence, and the good character of the defendant in this respect is a fact to be weighed and considered by the jury, in the light of which they should view all the evidence and determine the question of his innocence or guilt of the crime charged against him in the indictment. The above is the settled rule of the law in all criminal cases, as well in those in which direct and positive evidence is relied on as those in which the proof is circumstantial. But in cases of the latter kind the evidence of previous good character has more scope and force than in cases where the proof of the offense is positive and direct. In the language of an eminent judge, speaking upon this point: 'There may be cases so made out that no character can make them doubtful; but there may be others in which evidence given against a person without character would amount to conviction, in which a high character would produce a reasonable doubt, nay, in which character will actually outweigh evidence which might otherwise appear conclusive.' So that we repeat, the evidence on the subject of character is a fact fit and proper, like all the other facts in the case, to be weighed and estimated by the jury, who, when forming their conclusions upon the various facts and circumstances relied on against the defendant, will inquire and determine whether a person whose character is such as the defendant's has been stated to be by the witnesses testifying on that subject has or has not committed the particular crime for which he is called upon to answer."

In Rowe v. United States, 97 F. 779, 38 C. C. A. 496, the Circuit Court of Appeals

in the Eighth Circuit, in 1899, had before it an instruction on the evidence as to character. The Circuit Court of Appeals said of it: "When the court told the jury that, 'where the facts themselves establish either guilt or innocence, character is not admissible and cannot avail,' it, in effect, withdrew from the consideration of the jury all the evidence tending to show the good character of the accused. This was clearly erroneous. Evidence of the good character of an accused may itself produce in the minds of the jury a reasonable doubt as to his guilt." And the court added: "If the jury are not convinced of the guilt of the defendant beyond a reasonable doubt, then it is their duty to render a verdict of not guilty, without any evidence as to his good character. The object of introducing evidence of the good character of the accused is for the purpose of raising a reasonable doubt in the minds of the jury as to whether a man who has built up such a character in the community in which he lives is likely to be guilty of the crime with which he stands charged."

In Searway v. United States, 184 F. 716, 107 C. C. A. 635, the Circuit Court of Appeals for the Eighth Circuit, after declaring that evidence of good character is admissible in all criminal trials, said:

"There was evidence of general reputation of the accused for good character. The court denied his request to charge the jury that such evidence might of itself create a reasonable doubt of guilt, though without it no such doubt would exist; that upon the question of guilt such evidence was to be considered with all the other facts and circumstances of the case. On the contrary, the court charged that the fact 'that a defendant may bear a good reputation among his neighbors and those who know him of being a law-abiding, honest, upright citizen, is no ground on which he should be acquitted, if you find and believe from the other evidence in the case, beyond a reasonable doubt, that he committed the acts charged against him.' It will be perceived that the evidence of good character was put aside and deprived of its probative force, and the question of the innocence or guilt of the accused was left to the other evidence in the case."

And the court reaffirmed what it had said in Humes v. United States, 182 F. 485, 105 C. C. A. 158, to the effect that the good character of a person accused of crime may be shown in all criminal trials, whether the other evidence leaves the mind in doubt or not; and when it is established it becomes a fact in the case, to be considered with all other facts in determining the final issue of guilt or innocence of the accused. Because of the refusal to charge as requested the case was reversed.

In Warren v. United States, supra, the Circuit Court of Appeals for the Eighth Circuit held that the trial court committed no error in declining to charge that "evidence of an established reputation for good character, if relevant to the issue, may alone create a reasonable doubt, although without it the other evidence would be convincing."

The court had already charged as follows: "The fact that one charged with an offense has prior to the date of its alleged commission borne a good reputation as a law-abiding citizen is not a complete defense against such charge, for it is a matter of experience that persons bearing such reputation have been known, notwithstanding that, to violate the law; but such a reputation, established by the proof, should be considered by the jury in arriving at a verdict, together with all the other evidence in the case, and if, on a consideration of all the evidence, character evidence included, there lies in the mind of the jury a reasonable doubt that the defendant is guilty as charged, then the verdict should be not guilty."

The Circuit Court of Appeals held there was no necessity, in view of what had been already charged, to give the charge requested, and of the charge as given it said: "We are of the opinion that the last half of the above statement rescued the charge from what might have been error, and gave the law as favorably for the defendant as he could properly ask."

In Kaufmann v. United States, 282 F. 776, the court was asked to charge that good reputation, standing alone of itself, may create reasonable doubt, and it refused so to charge. This was held not to be error, and Judge Davis, writing for the Circuit Court of Appeals in the Third Circuit, said:

"Good reputation is the result of right thinking as reflected in right living, in a course of honest dealing and honorable conduct. This is, and should be, an important factor to be considered in determining the guilt or innocence of a person accused of crime. Every defendant is entitled to have his reputation for good character placed upon the scales in his behalf. When considered in connection with the other evidence in a case, it may be sufficient to create a reasonable doubt. The circumstances, established by the evidence, may be such that without good reputation the jury would have no doubt of the defendant's guilt, but, weighed

in connection with the other circumstances, which the jury must take into account, it may be the one element which turns the scales in the defendant's favor and creates reasonable doubt. In no case, which has been called to our attention and which our independent investigation has brought to light, has evidence of good reputation alone, without regard to the other evidence and circumstances of the case, been held sufficient to create reasonable doubt. Upon authority, therefore, we conclude that the defendant was not entitled to have the judge charge that his good reputation, standing alone, of itself, without regard to the other evidence or circumstances in the case, was sufficient to create reasonable doubt."

In Kalmanson v. United States (C. C. A.) 287 F. 71, the trial court had been asked "to charge that the evidence of good character may in and of itself be sufficient to create a reasonable doubt where without it none would exist." The majority of this court held that the refusal to so charge was not error, in view of the fact that the court had already instructed that the evidence concerning the defendant's character should be considered with and as a part of all the evidence, and that upon it all they must find the man guilty, if at all, beyond every reasonable doubt. And in our opinion in that case it was said that we regarded it as identical in principle with Warren v. United States, supra, and that "with the ruling there made we agree."

In Oppenheim v. United States, 241 F. 625, 154 C. C. A. 383, this court had before it a case in which the court charged: "Evidence of good character may, in certain cases, when a reasonable doubt would not otherwise exist, create a reasonable doubt and turn the scales, so to speak, if the evidence is nearly evenly balanced, and the jury otherwise might not have a reasonable doubt. Substantial evidence of good character making it improbable that the defendant would commit the offense charged may when added to that already adduced by the defendant or defendants, or in connection with the weakness and indefiniteness, or uncertainty, or unreliability of that produced by the government, create a reasonable doubt. But, gentlemen, when the evidence is clear, satisfactory, and convincing, backed up by letters written and documents made by the defendants and witnesses at the time of the happening of the transactions, and at the time of the occurrence to which they relate, and which are in question and excludes every hypothesis except that of guilt, and is consistent with guilt only, then a jury should not avoid responsibility upon the ground or theory that the defendant may not be guilty."

The defendants' request to charge and the court's answer were as follows: " 'The evidence of the previous good character of the defendants may of itself be sufficient to create a reasonable doubt.' I have already charged fully on that. Evidence of previous good character may, in a doubtful case, where it hangs in the balance, and the jury will not otherwise have a reasonable doubt, come in, and the jury would say that a man of that character and stamp would not commit an offense, and, the evidence being doubtful, evenly balanced, they would give him the benefit of that doubt."

The difficulty in that case was that the trial judge instructed that evidence of good character would only create a reasonable doubt if the evidence without it was evenly balanced; and this court, commenting on this, said: "As in that case the jury must have a reasonable doubt, evidence of good character would be quite unnecessary."

In Grace v. United States, 4 F.(2d) 658, 662, the Circuit Court of Appeals for the Fifth Circuit has even held unanimously that a refusal to instruct "that the good character of the defendants, taken with other evidence, might create a reasonable doubt," and said: "To give the charge as drawn would unduly accentuate evidence of good character. As well might counsel ask the court to charge on any other evidence before the jury that it was sufficient to create a reasonable doubt. This would infringe the province of the jury. The charge was properly refused."

In Le More v. United States, 253 F. 887, 165 C. C. A. 367, the Circuit Court of Appeals for the Fifth Circuit, speaking through Judge Grubb and referring to what was said in Edgington v. United States, 17 S. Ct. 72, 74, 164 U. S. 361, 366 (41 L. Ed. 467), said:

"What the court decided in that case was that the value of evidence of good character was not confined to doubtful or conflicting cases, or not to be considered by the jury 'unless the other evidence left the mind in doubt,' but that the weight of authority was to the effect that good character in any case, when considered in connection with the other evidence in the case, might generate a reasonable doubt. What the court said with reference to reputation for good character under some circumstances alone being sufficient to create a reasonable doubt, though without it the other evidence would be convincing, was said by way of argument, and not to announce a rule of law to be given in charge to

the jury. We do not think that the trial judge was required to charge the jury in the language quoted from the opinion."

In Joyce v. United States, 294 F. 665, the court charged that, " * * * evidence of good reputation having been produced, it was the duty of the jury to consider such evidence, and all the other evidence in the case, and that 'if, upon a consideration of all the evidence, including that of good reputation,' the jury entertained any reasonable doubt of defendant's guilt it was their duty to acquit him; but that if, 'after considering all the evidence, including that of good reputation,' they had no doubt of his guilt, it was equally their duty to convict him, notwithstanding such good reputation." The Circuit Court of Appeals for the Ninth Circuit sustained the charge as given.

In Snitkin v. United States (C. C. A.) 265 F. 489, 491, the court was requested to charge as follows: "You have heard evidence of the standing and reputation of this defendant, Leonard Snitkin, for good character. That reputation alone may create a reasonable doubt of this defendant's guilt in your minds, and is proper for you to consider." In connection with that request counsel called attention to the Edgington Case. The court charged as follows: "If such defendant has in the community where he lives, by his incomings and outgoings among his neighbors, built up a good reputation among them for the qualities about which this testimony has been given, you should give that fact such weight as you think it is entitled to, taking into consideration all the other facts and circumstances established by the evidence."

The Circuit Court of Appeals in the Seventh Circuit held that the trial court erred in refusing the request to charge preferred by counsel, and in doing so said: "Thus the court placed the evidence respecting good reputation on the same basis as the evidence relating to the substantive acts charged in the indictment, and directed the jury to give it such weight as they might think it entitled to, without furnishing them the legal scales in which to weigh it, namely, that a reputation for good character, if established, alone may create a reasonable doubt, although without it the other evidence would be convincing of guilt. In view of the contest between Schur and plaintiff-in-error over the jury's acceptance of one or the other of their conflicting stories, the error was prejudicial."

In Egan v. United States, 287 F. 958, 52 App. D. C. 384, the court had before it a request to charge as follows: "The jury are instructed that the circumstances of a case may be such that an established reputation for good character would alone create a reasonable doubt, although without it the other evidence would be convincing." The request was denied and the court charged instead:

"While I think that I should say, and so say to you, that the testimony in regard to reputation, if you believe it, is to be taken into consideration, as a fact in the case, together with all the other facts in the case, and weighed with those facts in order to enable you to reach a fair and proper conclusion, a man is entitled to the benefit before the jury of a good reputation, if he bore one, for honesty, etc., just as he is entitled to the benefit of any other fact which may be favorable to him in the case, but all to be put together and weighed together, and then the jury makes up its mind what the proper verdict should be. But, of course, you must always understand that a good reputation is no excuse for the commission of a crime. It is no palliation for it. If you believe, considering reputation and everything else, that the man is guilty, the fact that he has borne a good reputation is not an excuse."

The Court of Appeals for the District of Columbia held that the refusal to charge as requested was prejudicial error, and for that and other reasons reversed the case, and commenting upon the refusal to charge as requested the court said: "The defect in the Court's charge is that it does not respond to the proposition of law contained in the prayer requested, namely, that reputation of good character may be such as alone will create a reasonable doubt, where, without it, all the other evidence in the case would be convincing."

The same court in Jones v. United States, 289 F. 536, 53 App. D. C. 138, held it error to refuse to charge: "The jury are instructed that the circumstances of a case may be such that an established reputation for good character would alone create a reasonable doubt, although without it the other evidence would be convincing."

In its general charge the court had already instructed as follows: "Another thing, before saying what I want to say finally in the matter, there is testimony here that the defendant Jones bears a good reputation in the community for honesty, I believe it was said. You heard the testimony, and if you are satisfied that he bears such a reputation he should have the benefit of that fact as circumstance or fact in the case,

together with the other facts and circumstances in the case, weighing them together and helping you to reach a determination as to whether or not he is guilty."

And the Court of Appeals, in holding that the court should have given the charge as requested, said: "We think that the court erred in refusing to give the instruction as requested, notwithstanding that others upon the same subject were given in the general charge. The instruction as requested explained the subject in specific and concrete terms, whereas those contained in the general charge simply informed the jury in effect that they should consider such testimony together with the other testimony in [the] case in order to reach their verdict."

In Roth v. United States, 294 F. 475, 482, the Circuit Court of Appeals for the Sixth Circuit said: "It is true that defendant would have been entitled, had he so requested, to an instruction that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt, and that the circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt."

In Arnstein v. United States, 296 F. 946, 54 App. D. C. 199, the Court of Appeals of the District of Columbia had before it a refusal to charge as follows: "The court instructs the jury that the circumstances of a case may be such that an established reputation for good character would alone create a reasonable doubt, although without it the other evidence would be convincing."

It appears that there were several defendants and that evidence of good character had been introduced concerning certain, but not all, the defendants; and the Court of Appeals said: "A reasonable doubt with respect to whom? With respect to those who had not produced evidence of good character, as well as to those who had? The request is too broad. Besides, it is an abstract statement, not applied to the evidence in the case."

In Allen v. United States, 4 F.(2d) 688, 694, the Circuit Court of Appeals in the Seventh Circuit passed upon the refusal of the court to charge the following request: "The court has permitted you to hear evidence of the standing and reputation of the defendant Johnson for good character. That reputation alone may create a reasonable doubt of the defendant Johnson's guilt, in your minds, and is proper for you to consider."

The court, sustaining the refusal to so instruct, said: "The vice of the language in the proposed instruction lies in the fact that it gives undue prominence to evidence which in some cases is unwarranted, and erroneously conveys to the jury the impression that such character witnesses have favorably impressed the court, when such may not have been the case. We think the instruction given by the trial judge was entirely correct, and no error was committed in refusing to give the proposed instruction." The instruction which the court actually gave, and which the Court of Appeals upheld, may be found in the margin.[1]

In Scheib v. United States, 12 F.(2d) ——, as yet unreported, the Circuit Court of Appeals for the Seventh Circuit adheres to the above decision. The court said:

"Some of the requested instructions were on behalf of certain of the plaintiffs in error as to whose previous good reputation witnesses had testified. The requests were to charge the jury in substance that such testimony might in itself produce reasonable doubt of the guilt of the defendant, in which case the jury should acquit such defendant. As to such evidence the jury was charged that 'that evidence is properly received, and it is for you to consider with all the other evidence in the case and give it such weight as you think it deserves.' Adhering to the conclusion reached on a quite similar situation which arose in Allen et al. v. United States (C. C. A. Ind.) 4 F.(2d) 688, we hold adversely to the contention of error in this respect."

An examination of the cases reveals some difference of opinion in the federal courts on the subject herein considered, but this court is satisfied that the reasonable doubt of guilt, which justified a jury in acquitting one accused of crime, must arise from *all* the evidence in the case including that of good character; and an instruction which ignores, as did the request to charge in this case, that the jury, in considering the good character

---

[1] "Certain testimony has been introduced in this case, on behalf of some of the defendants, in support of their previous reputation as being law-abiding citizens, and for honesty and integrity. The law requires that the jury should consider that evidence and give it such weight as they see fit. I wish to caution you, however, that the mere circumstance that a person has borne a good reputation prior to the time when he was accused of complicity in a crime, should not be used by the jury as a means of excusing the commission of the crime, or of showing leniency to one whom the evidence, otherwise, in connection with his evidence of good reputation, thoroughly satisfies the jury of the matter of his guilt."

of a defendant, must consider it along with the other evidence in the case, is plainly erroneous. Blashfield's Instructions to Juries (2d Ed.) vol. 3, § 388.

[11, 12] In a criminal case a court should instruct on all essential questions of law involved in the case, whether requested or not. People v. Odell, 130 N. E. 619, 230 N. Y. 481; Commonwealth v. Ferko, 112 A. 38, 269 Pa. 39; Pearson v. State, 226 S. W. 538, 143 Tenn. 385; Duroff v. Commonwealth, 232 S. W. 47, 192 Ky. 31; State v. Lackey, 132 S. W. 602, 230 Mo. 707. Counsel had no right, however, to assume that the court, in the absence of a request, would instruct upon the evidence concerning the character of the defendant; for, while there are some subjects upon which counsel may assume that the court will instruct without request, character evidence is not one of them. People v. Luce, 178 N. W. 54, 210 Mich. 621; State v. Poder, 135 N. W. 421, 154 Iowa, 686; Brantley v. State, 113 S. E. 200, 154 Ga. 80; State v. Peterson, 16 P. 263, 38 Kan. 204; State v. McNamara, 13 S. W. 938, 100 Mo. 100; Branson's Instructions to Juries (2d Ed.) § 126, p. 205.

In Hermansky v. United States, 7 F.(2d) 458, 460, the Circuit Court of Appeals for the Eighth Circuit held it is the duty of the court of its own volition, and in the absence of any request, to instruct on the subject of character evidence. The court said:

"It is insisted under assignments of error 25 and 26 that the court erred in not instructing the jury with reference to the testimony of the character witnesses produced by the defendant. Good character is not a defense, but evidence of good character may raise a reasonable doubt in the minds of the jury as to a defendant's guilt. The court should have instructed on this question, and doubtless, if defendant had asked for such instruction, the court would have given the same. Defendant, however, did not ask such instruction, nor did he except to the failure of the court to instruct thereon. Not having done so, he is not in a position now to raise the question."

We think that what the Circuit Court of Appeals said as to its being the duty of the court specially to instruct upon character evidence, without any request, is not supported by the weight of authority; and in the instant case, if counsel desired an instruction upon that subject, the request should have been presented in "apt time." And the request in this case, made at the close of the charge, was not in "apt time," not having been presented as required by rule 7 of the court.

A request to instruct which is presented to the court in violation of a somewhat similar rule of court, and which was not given, was held not to be error in Life Insurance Co. v. Francisco, 17 Wall. 672, 679 (21 L. Ed. 698). Mr. Justice Strong, writing for a unanimous court, said:

"The rule of the court then existing was as follows: 'In causes, civil or criminal, tried by a jury, any special charge or instruction asked for by either party must be presented to the court, in writing, directly after the close of the evidence and before any argument is made to the jury, or they will not be considered.' This is a reasonable rule, intended to guard as well the court as the opposite party against sudden surprise. It does not deprive either party of a right to the opinion of the court upon any material propositions which he may desire to have presented to the jury. It merely regulates the exercise of that right. The rule exists in very many courts, and it has been found necessary in the administration of justice. No doubt a court may, notwithstanding the rule, in its discretion, receive prayers for instructions, even after the general charge has been given to the jury; but neither party can claim as a right a disregard of the ordinary rules of practice in the court."

[13] In the instant case the court refused to give the instruction requested, but assigned no reason for declining it. The court was not obliged to state his reason. It is sufficient that a legal reason existed.

We are asked to reverse the judgment of conviction:

First. Because the court erred in refusing defendant's request to charge as requested respecting the character testimony. But we think, for the reasons stated, that the request was made too late, was improperly worded, and properly refused.

[14] Second. Because the court erred in omitting entirely from his charge all reference to character testimony. We do not think the court was bound to select the evidence on that subject and comment specially upon it, unless requested to do so and requested in proper time, and no such request was made at any time—the only request that was made being for an instruction which the court could not properly give, which was made out of order, and when it was refused no other instruction on the subject was asked.

[15] Third. Because the case, it is said, is one in which character testimony is peculiarly material, and in which it would have been of especial benefit to the defendant, had the

jury been properly instructed. If counsel had asked the court at the proper time to instruct the jury as to the testimony on that subject, it would have been the duty of the court to have complied with the request, and to have correctly charged concerning it. Having failed to do so, and having made a request, improperly worded and presented too late, this court is now asked, not for any error made by the court, but for an error made by defendant's own counsel, to set aside the verdict and order a new trial. This we cannot do, and we do not agree with counsel that, in declining the request to charge in the form in which it was presented, the trial judge in effect removed such testimony entirely from the consideration of the jury, and in fact virtually compelled them "to reject entirely the unusually strong character evidence which had been produced on the defendant's behalf."

Judgment affirmed.

MANTON, Circuit Judge, concurs in the result.